**MILLER NASH LLP**
Phillip Allan Trajan Perez, Bar No. 234030
trajan.perez@millernash.com
340 Golden Shore, Suite 450
Long Beach, California 90802
Telephone: 562.435.8002
Facsimile: 562.435.7967

**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**
Georgette Castner, (Admitted *Pro Hac Vice*)
NJ Bar No. 033042006
gcastner@mmwr.com
Richard Placey, (Admitted *Pro Hac Vice*)
NJ Bar No. 001331985
rplacey@mmwr.com
457 Haddonfield Road, Suite 600
Cherry Hill, NJ 08002
Tel: 856-488-7794
Fax: 856-488-7720

Attorneys for Defendant
BRENNTAG SPECIALTIES, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN INTERNATIONAL INDUSTRIES, a California General Partnership,<br><br>Plaintiff,<br><br>v.<br><br>BRENNTAG SPECIALTIES, INC., now known as BRENNTAG SPECIALTIES, LLC a Delaware Corporation and DOES 1 through 10,<br><br>Defendants. | Case No. 2:21-cv-03888-RGK-KK<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>**Date:**  August 16, 2021<br>**Time:**  9:00 A.M.<br>**Courtroom:** 850<br>**Location:** 255 E. Temple St.<br>  Los Angeles, CA 90012<br>**Judge:**  Hon. R. Gary Klausner |

**TABLE OF CONTENTS**

I. INTRODUCTION……………………………………………………….….. 1

II. ARGUMENT IN REPLY……………………………………………………... 1

    A. BSI's Motion to Dismiss is Procedurally Proper……………………. 1

    B. AII Does not Plead Facts to Support Successor Liability……………. 2

    C. AII's Arguments in Support of its Post-2004 Claims Improperly ask this Court to Second Guess State Courts……………. 6

III. CONCLUSION……………………………………………………….… 10

# CASES

*Aaron & Andrew, Inc. v. Sears Holdings Mgmt. Corp.*,
  No. CV 14-1196 SS, 2018 WL 1942373 (C.D. Cal. Mar. 26, 2018) ................... 3

*Chong v. Nestle Waters North America, Inc.*,
  No. CV1910901DMGKSX, 2020 WL 7690175 (C.D. Cal. Nov. 30, 2020) ............................................................................................................. 2

*City of Los Angeles v. Sprint Solutions, Inc.*,
  No. CV-16-7512, 2017 WL 1398640 (C.D. Cal) .................................................. 7

*Garcia v. New Albertson's, Inc.*
  No. 2:13-CV-05941-CAS, 2014 WL 4978434 (C.D. Cal., Oct. 3, 2014) ............................................................................................................. 5

*Gerritsen v. Warner Bros. Ent. Inc.*,
  116 F. Supp. 3d 1104 (C.D. Cal. 2015) ................................................................ 6

*Gulius v. National Hot Rod Association*,
  No. CV202011DMGRAOX, 2021 WL 1218262 (C.D. Cal., Feb. 2, 2021) ............................................................................................................. 5

*Innovative Display Techs. LLC v. Microsoft Corp.*,
  No. 2:13-cv-00783-JRG, 2014 WL 2757541 (E.D. Tex. June 17, 2014) ............................................................................................................. 8

*Joe Leighton & Assoc., Inc. v. Hardware Components, Inc.*,
  No. EDCV 10–156–JST, 2010 WL 11556593 (C.D. Cal. Dec. 28, 2010) ............................................................................................................. 7

*KNT, Inc. v. United States*,
  No. 18-CV-00882-SK, 2019 WL 1473458 (N.D. Cal., Feb. 15, 2019) ............................................................................................................. 6

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 2:10-CV-0302 MRP, 2011 WL 1765509 (C.D. Cal. Apr. 20, 2011) ............................................................................................................. 4

*Mel Clayton Ford v. Ford Motor Co.*,
  127 Cal. Rptr.2nd 759, 766, 104 Cal. App. 4th 46 (2002) ................................... 9

*Mid-Century Ins. Co. v. AMCO Ins. Co.*,
   No. CV1402339ABJEMX, 2015 WL 12661914 (C.D. Cal. Oct. 30,
   2015) .................................................................................................................. 6

*Mitchell v. Brenntag N. Am., Inc.*,
   No. 16CV190475, 2018 WL 11177070 (Ohio Com. Pl. Mar. 28,
   2018) .................................................................................................................. 3

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
   No. 11-CV-02861-SC, 2013 WL 3786618 (N.D. Cal. July 18,
   2013) .................................................................................................................. 6

*Parungao v. Comm. Health Sys., Inc.*,
   858 F. 3d 452 (7th Cir. 2017) ............................................................................ 7

*Publicis Commc'n v. True N. Commc'ns*,
   132 F.3d 363 (7th Cir. 1997) ............................................................................. 8

*Ratcliff v. American Honda*,
   No. 1:17CV174, 2019 WL 1261411 (M.D.N.C. Jan. 15, 2019) ........................ 3

*Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*,
   468 F. Supp. 1236 (C.D. Cal. 2020) .................................................................. 5

*Smith v. Frank*,
   923 F.2d 139 (9th Cir. 1991) ............................................................................. 2

*Snell v. G45 Secure Solutions (USA) Inc.*,
   424 F. Supp. 3d 892 (E.D. Cal. Dec. 19, 2019) ................................................. 1

*TMF Trustee Ltd. v. M/T Megacore Philomena*,
   No. CV 17-09010 AGR, 2020 WL 3064447 (C.D. Cal., Mar. 24,
   2020) .................................................................................................................. 8

*Trident Labs, Inc. v. Merrill Lynch Comml. Fin. Corp.*,
   200 Cal. App. 4th 147 (2011) ............................................................................ 8

**STATUTES**

Fair Credit Reporting Act ........................................................................................ 1

**OTHER AUTHORITIES**

Federal Rule of Civil Procedure 9(b) ...................................................................... 4

MILLER NASH LLP
ATTORNEYS AT LAW
LONG BEACH

iii

REPLY IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO
DISMISS FIRST AMENDED COMPLAINT

N.J. Court Rule 4:30A ................................................................................................... 7

Pa. R. Civ. P. 1041.1 ...................................................................................................... 7

I.  **INTRODUCTION**

American International Industries ("AII")'s First Amended Complaint (the "FAC") is a hodgepodge of claims about thirty seven distinct cases, filed in nine different states for which AII now seeks a single declaratory judgment that all these cases, despite their differences, are encompassed by the indemnity agreement between AII and Brenntag Specialties, LLC ("BSI"). Some of these cases relate to sales of talc made to AII before BSI ever existed, others are in states where local rules and law require BSI to bring this claim there, and in others local rules and law deem that AII has already brought this claim there.

BSI's Motion to Dismiss FAC (the "MTD") asks this Court to declutter this lawsuit by cutting out claims for which AII has failed to state a claim, and where intervention by a Federal Court is inappropriate or unnecessary. The Court can do so because: (a) AII has not plead facts sufficient to support its claim that BSI is liable as a successor to another company, Whittaker, Clark & Daniels ("WCD"), from which BSI made an asset purchase in 2004; (b) AII was required to bring this claim in some of the Underlying Lawsuits identified in the FAC and should not ask this Court for a second opinion; and (c) AII has, by rule, already brought this claim in some of the Underlying Lawsuits and this Court has no reason to intervene.

II. **ARGUMENT IN REPLY**

   A.   **BSI's Motion to Dismiss is Procedurally Proper**

AII argues that the MTD is improper because it seeks to dismiss less than the entirety of AII's claims, citing *Snell v. G45 Secure Solutions (USA) Inc.*, 424 F. Supp. 3d 892, 904 (E.D. Cal. Dec. 19, 2019). AII's Opposition to Motion to Dismiss ("Opp.") pp. 5-6. In *Snell*, to state a claim the plaintiff was required to plead a violation of any of three requirements under the Fair Credit Reporting Act. *Id.* The *Snell* court rejected the defendants attempt to dismiss allegations aimed at just some of those requirements, since the survival of even one would mean the plaintiff stated a claim. *Id.*

In this case, however, AII wedges thirty-seven Underlying Lawsuits into each of its causes of action. For instance, in Count I (Declaratory Relief-Duty to Defend), AII asks the Court to rule on BSI's "obligation to provide AII with a defense to *each* of the Underlying Lawsuits…" FAC ¶ 31. Under the rule of law proposed by AII, a plaintiff can ensure that any claims, no matter how weak, can survive dismissal so long as it can combine them with a single viable claim. The Court should not allow judicial resources to be wasted adjudicating claims as to "each" Underlying Lawsuit when the FAC cannot state a claim as to those Underlying Lawsuits.[1]

### B. AII Does not Plead Facts to Support Successor Liability

In the FAC, AII asks the Court for a declaratory judgment that BSI "is responsible for WCD's liabilities to AII arising from the Underlying Lawsuits." FAC p. 19, ¶ 19.[2] The Court should dismiss this claim—and AII's other claims to the extent they are based on products AII purchased from WCD and not BSI—for two reasons.

First, AII concedes that the indemnity agreement between AII and BSI (the "Agreement") does not include "predecessors" in its scope.[3] Instead, AII argues in its opposition brief that because the Agreement applies to talc sales that occurred before the Agreement was signed, it is "retroactive" and therefore covers talc sales

---

[1] AII also argues, in a footnote, that BSI's MTD was untimely because after BSI filed it, as required, on July 12, 2021, the Court struck the filing for a formatting error on July 13, 2021. Opp. p. 6 fn. 2. In the Ninth Circuit, however, documents timely filed with the Court and subsequently rejected or stricken for violation of local formatting rules are nonetheless considered timely and "constructively" filed. *See e.g.*, *Smith v. Frank*, 923 F.2d 139, 142 (9th Cir. 1991) ("Pleadings which are timely filed, but overly long under local rules should not be rejected without a reasonable, even if conditional, opportunity to conform to the local rules.").

[2] The FAC does not specify what WCD's liabilities to AII are, if any.

[3] *See e.g.*, *Chong v. Nestle Waters North America, Inc.*, No. CV1910901DMGKSX, 2020 WL 7690175, at *9 (C.D. Cal. Nov. 30, 2020) (granting motion to dismiss unjust enrichment claim because plaintiff failed to respond to arguments and therefore conceded).

to AII that occurred before BSI was ever incorporated. Opp. p. 10. But this argument contradicts the plain language of the Agreement, which states that it covers sales by BSI "its affiliates, subsidiaries, assigns, agents and employees." FAC, Ex. C. As the facts alleged in the FAC show, WCD is none of these.

AII attempts to avoid the meaning of the word "affiliate" by claiming that the FAC alleges that "both WCD and BSI marketed and sold talc as a member of the Brenntag conglomerate of companies." Opp. p. 10. However, the FAC acknowledges that there is no moment in time when WCD and BSI were both part of that corporate family. FAC ¶¶ 10-11. AII's arguments repeatedly conflate BSI and other entities owned by Bain Capital with an entity it calls "Brenntag AG." AII then attempts to paint mundane corporate transactions involving the Brenntag conglomerate as nefarious, but "Brenntag AG" is not a party to the Agreement, and "[p]arent companies and their subsidiaries are presumptively distinct entities under California law[.]" *Aaron & Andrew, Inc. v. Sears Holdings Mgmt. Corp.*, No. CV 14-1196 SS, 2018 WL 1942373, at *10 (C.D. Cal. Mar. 26, 2018). Without this conflation, AII is left with the fact that WCD remains a subsidiary of Stinnes AG, and was no longer part of the Brenntag corporate family when BSI (then known as MSPI) was incorporated. FAC ¶¶ 10-11. Because the two companies were never part of the same corporate family at the same time, they are not "affiliates" under the commonly accepted meaning of the term, and AII makes no alter ego or other veil piercing allegations or arguments to support disregarding the corporate form.

Because the language of the Agreement itself does not support AII's claim that BSI must meet WCD's liabilities to AII—whatever they are—for sales that occurred prior to 2004, AII insists that BSI must do so as the "successor" to WCD.[4]

---

[4] On pages 11 and 12 of the Opp., AII cites to *Ratcliff v. American Honda,* No. 1:17CV174, 2019 WL 1261411 (M.D.N.C. Jan. 15, 2019) and *Mitchell v. Brenntag N. Am., Inc.*, No. 16CV190475, 2018 WL 11177070 (Ohio Com. Pl. Mar. 28, 2018) for the proposition that other plaintiffs have established a *prima facie* case that BSI is a successor-in-interest to WCD. However, neither *Ratcliff* nor *Mitchell* applied Delaware or California law on the issue of successor liability.

1  This argument fails because the FAC fails to plead facts sufficient to support a
2  finding of successor liability under either Delaware or California law. MTD pp. 11-
3  14.
4       AII begins its argument in opposition by asking this Court to ignore the core
5  holdings in *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 2:10-CV-0302
6  MRP, 2011 WL 1765509 (C.D. Cal. Apr. 20, 2011) by complaining that BSI's
7  MTD "conducts no choice of law analysis." Opp. p. 12. This argument asks this
8  Court to elevate form over substance. The *Maine State* court found that there is a
9  "true conflict between Delaware and California law" on the issue of successor
10 liability. *Maine State*, 2011 WL 1765509, at *3. The court then found that
11 Delaware had a greater interest in having its law applied because the asset transfer
12 agreement at issue there involved Delaware corporations. *Id.* at *4. The facts in
13 *Maine State* are largely identical to those here, and AII has offered no substantive
14 reason for the Court to diverge from the reasoning in *Maine State*. AII's opposition
15 concedes by omission that AII's claims for successor liability fail under Delaware
16 law. Accordingly, the Court should dismiss AII's successor liability claims and any
17 claims relating to Underlying Lawsuits based solely on pre-2004 talc sales.
18      Assuming for the sake of argument that California law applies, the FAC has
19 failed to state a claim, and AII's arguments in opposition misstate California law.
20 The only theory of successor liability following an asset purchase that AII seriously
21 argues is a "mere continuation" theory.[5] AII then claims that it need only show
22 "***one or both*** of the following factual elements for an entity to be a mere
23 continuation: (1) no adequate consideration was given for the predecessor
24 corporation's assets and made available for meeting the claims of its unsecured

---

Thus, it is not clear what persuasive value they have here.

[5] AII makes two offhand references to a "fraudulent purpose" theory but never fleshes this argument out. Opp. p. 13. In any event, the FAC makes no attempt to plead fraud with the particularity required by Federal Rule of Civil Procedure 9(b).

creditors; (2) one or more persons were officers, directors, or stockholders of both corporations." Opp. p. 13 (emphasis in original). This is not a fair statement of the law. "Although these factors are presented in the disjunctive, 'inadequate consideration is an essential ingredient to a finding that one entity is a mere continuation of another.'" *Reno-Tahoe Specialty, Inc. v. Mungchi, Inc.*, 468 F. Supp. 1236, 1241 (C.D. Cal. 2020) (quoting *Katzir's Floor & Home Design, Inc. v. M–MLS.com*, 394 F.3d 1143, 1150 (9th Cir. 2004)). "Courts have held that common officers and shareholders alone are insufficient to establish a mere continuation." *Id.* As BSI noted in its MTD, the FAC makes no factual allegations whatsoever about the adequacy of the consideration paid for WCD's assets.[6] MTD p. 13.

AII fails to plead "mere continuation" for the independent reason that it concedes that WCD still exists. FAC ¶ 17. AII cites *Cleveland v. Johnson* to support the proposition that "the 'mere continuation' doctrine does not require that the predecessor entity cease to exist." 209 Cal. App. 4th 1315, 1330-31 (2012); Opp. p. 13, n. 6. This is an overstatement. The court in *Cleveland* specifically rejected the assertion that "there can never be successor liability as between a separately operated division of a company and a new corporation." *Cleveland*, 209 Cal. App. 4th at 1330. There, equitable principles compelled rejection of that assertion under the specific circumstances of the case—which included the fact that the individual defendant and successor corporation owed a fiduciary duty to the plaintiff. No such circumstances are present here, and subsequent opinions have noted that *Cleveland* is a narrow holding limited to its facts. *See Garcia v. New*

---

[6] Apparently acknowledging that its complaint lacks sufficient facts, AII raises new factual allegations in its opposition. Opp. p. 3 (regarding WCD being an "insolvent" company), p. 11 n. 4 (alleging new facts under the guise of a request for judicial notice). These should be disregarded. *See Gulius v. National Hot Rod Association,* No. CV202011DMGRAOX, 2021 WL 1218262, at *1 (C.D. Cal., Feb. 2, 2021) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (review of a motion to dismiss is limited to the contents of the complaint)).

*Albertson's, Inc.* No. 2:13-CV-05941-CAS, 2014 WL 4978434, at *12 (C.D. Cal., Oct. 3, 2014); *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-CV-02861-SC, 2013 WL 3786618, at *6 (N.D. Cal. July 18, 2013). The requirement that the predecessor entity no longer exist for a finding of "mere continuation" remains alive and well in all but the most unusual cases decided in the eight years following *Cleveland*. *See, e.g.*, *KNT, Inc. v. United States*, No. 18-CV-00882-SK, 2019 WL 1473458, at *10 (N.D. Cal., Feb. 15, 2019) ("Thus, where the corporation selling assets still exists and remains answerable for the continuing liabilities, neither exception of de facto merger nor mere continuation applies."); *Gerritsen v. Warner Bros. Ent. Inc.*, 116 F. Supp. 3d 1104, 1127-35 (C.D. Cal. 2015); *Mid-Century Ins. Co. v. AMCO Ins. Co.*, No. CV1402339ABJEMX, 2015 WL 12661914, at *7 (C.D. Cal. Oct. 30, 2015) ("[seller] still existed after it transferred its interests in the Property and Restaurant, so the "mere continuation" theory doesn't apply.").

AII has conceded that its claims that BSI should be liable for WCD's sales of talc fail under Delaware law, and even under California law, the FAC pleads facts that preclude a finding of successor liability. Accordingly, the Court should dismiss AII's successor liability claim and claims based on Underlying Lawsuits that allege only pre-2004 sales with prejudice.

### C. AII's Arguments in Support of Its Post-2004 Claims Improperly Ask this Court to Second Guess State Courts

BSI's MTD showed that AII's claims based on post-2004 (non-WCD) sales[7] are not plausible for several reasons: because they are barred by *res judicata* where the Underlying Lawsuit has been resolved and encompassed cross-claims[8]; because they are barred by the first filed rule, where the Underlying Lawsuit is pending and

---

[7] As noted, this argument also applies to claims based on pre-2004 sales (by WCD), though such claims lie only against WCD. MTD p. 14, n.17.

[8] MTD pp. 17-18.

encompasses cross-claims[9]; or because the Court should not take up duplicative factual determinations here under principles of forum non-conveniens or comity.[10] MTD pp. 13-19. In response, AII argues that it has formulaically recited the elements of the various claims based on post-2004 sales (Counts I, II and IV-VII), and the bare recital should be enough to state a claim. It then offers various other arguments directed to discrete lawsuits or issues. Opp. pp. 5-10, 14-20. As to the recital of the elements of the claims, it is well established that—whether the elements are pled or not—a claim is not plausible and should not proceed if it is barred by rules like *res judicata* or the first filed rule. *Parungao v. Comm. Health Sys., Inc.*, 858 F. 3d 452, 459 (7th Cir. 2017) (affirming dismissal of a complaint under Rule 12(b)6 where it was barred by *res judicata* and related Illinois rules).

     AII then argues that even where legal rules like *res judicata*, the first filed rule or equitable principles bar their claims, the forum selection clause overrides such rules of law or equitable principles. Opp. pp. 17-18. This argument is meritless as private contracts do not override legal rules (like *res judicata*), statutes, or court rules (like Pa. R. Civ. P. 1041.1; N.J. Court Rule 4:30A) or court orders. *City of Los Angeles v. Sprint Solutions, Inc.*, No. CV-16-7512, 2017 WL 1398640 (C.D. Cal) at *2 (statute overrides contractual agreement re venue). Moreover, having chosen to file <u>these exact claims</u> via third party complaint against BSI in the *Cairo* case in New Jersey (Defts RJN[11] at p. 93-106, Ex. H), AII has waived any arguments that the forum selection clause should prevent litigation of the claims in the Underlying Lawsuits. *Joe Leighton & Assoc., Inc. v. Hardware Components, Inc.*, No. EDCV 10–156–JST (OPx), 2010 WL 11556593, at *2 (C.D. Cal. Dec. 28,

---

[9] MTD p. 18.
[10] MTD pp. 18-19.
[11] Defendant's Request for Judicial Notice in Support of Motion to Dismiss First Amended Complaint ("Defts RJN")

2010); *Trident Labs, Inc. v. Merrill Lynch Comml. Fin. Corp.*, 200 Cal. App. 4th 147, 157 (2011).

Essentially, AII's forum selection clause argument is that <u>it</u> may file these claims either in the Underlying Lawsuits or in this action—whatever suits AII best. In addition, AII then can compel BSI to litigate either in the Underlying Lawsuits or here—again, whatever suits AII.  That argument is specious.  In any event, the reality is that BSI has not chosen to institute and litigate these claims in other Courts;[12] rather, personal injury plaintiffs and even AII itself have chosen to do so. Just as an example, in the *Abeyta* Underlying Lawsuit, as AII acknowledges in Opp. footnote 3 on page 9 "the plaintiff there sued BSI as the successor in interest to MPSI and WCD <u>just as AII alleges here</u>." (emphasis added).[13]  As AII admits therefore, it seeks to litigate again here the very claims made in *Abeyta* and the other Underlying Lawsuits.  The cases AII cites on Opp. p. 17, for the proposition that the forum selection clause should supersede legal rules like *res judicata* are inapposite.  None involved circumstances where, as here, the party seeking to invoke the forum section clause had previously asserted these identical claims elsewhere (as AII has in *Cairo*), or where these identical claims have been asserted by third parties in other underlying lawsuits (for example in *Abeyta*).[14]

---

[12] As noted, seven of the FAC Exhibit D cases are already in California, which is AII's chosen venue under the Agreement.

[13] AII then argues that "no proof of service [on WCD] is included in Defts RJN," *id.* though AII cannot explain why such "proof of service" in *Abeyta* matters in any event.  Factually, and contrary to AII's suggestion, Defts RJN at p. 46 (Ex. E) shows at the bottom of the caption that WCD is a named party.

[14] In those cases, either the party seeking to invoke the forum selection clause had brought suit in the selected forum, *Publicis Commc'n v. True N. Commc'ns,* 132 F.3d 363, 365 (7th Cir. 1997);  and *Innovative Display Techs. LLC v. Microsoft Corp.*, No. 2:13-cv-00783-JRG, 2014 WL 2757541, at *6 (E.D. Tex. June 17, 2014) or the case was an *in rem* action involving seizure and sale of property located outside the selected forum. *TMF Trustee Ltd. v. M/T Megacore Philomena,* No. CV 17-09010 AGR, 2020 WL 3064447 (C.D. Cal., Mar. 24, 2020).

1    Elsewhere, AII makes various claims that the *res judicata*, first filed, and
2 related arguments should be discounted because BSI "presents no evidence that it is
3 a party to any of the New Jersey cases" or to the *Venezia* case in Pennsylvania.
4 Opp.p. 9 n. 3, p. 19. This is disingenuous as AII is a party to these litigations, and
5 as such it knows who the parties are. To that point, filed herewith is Defendant's
6 Supplemental Request of Judicial Notice in Support of Motion to Dismiss First
7 Amended Complaint, which attaches the portions of the publicly and officially
8 available dockets that list for easy reference the parties to these cases (the listings
9 for AII and BSI on each are highlighted for convenience). AII knew that BSI was a
10 party—with AII—to these cases when it filed the opposition brief; it nevertheless
11 sought to suggest otherwise to the Court.

12   AII's Opp. at p. 15 suggests that a duty to defend may be triggered when suit
13 is filed – even where those very suits contain claims (like negligence) that are
14 expressly not indemnified, *see., e.g., Abeyta* Complaint (Defts RJN, Ex. E), Fifth
15 Cause (Negligent Misrepresentation) and ¶¶ 7, 57, or where as in *Colpitts* there was
16 no exposure to anything BSI supplied. AII is incorrect.[15]

17   AII's claim that it may still be entitled to recover for a defense in *Colpitts* (a
18 case listed in FAC Ex. D), Opp. p. 9, highlights the implausibility of its claims –
19 particularly in resolved cases. The Agreement expressly excludes indemnification
20 for AII's own negligence, and is limited to (1) liabilities directly and proximately
21 caused, (2) by defective goods (raw talc) and (3) sold by supplier. The jury in
22 *Colpitts* answered "no" to the question <u>"was plaintiff exposed" to asbestos from
23 Defendant's (WCDs or AII's) Product</u>. Defts RJN at 87 (Ex. F). Because the
24 *Colpitts* jury found that there was <u>no exposure</u> from an AII product, there can be no

---

[15] *See Mel Clayton Ford v. Ford Motor Co.,* 127 Cal. Rptr.2nd 759, 766, 104 Cal. App. 4th 46 (2002) (where indemnity provision required Ford to defend the dealer, not for the dealers' negligence, but only where the occurrence was caused solely by a production defect, the dealer-indemnitee was not entitled to indemnity for defense costs simply because product liability was one of the allegations in the Complaint but must prove an indemnified liability).

defense costs directly and proximately caused by anything BSI (or anyone else) sold to AII. This case illustrates how the FAC here is a collateral attack, inviting this Court to re-examine the non-exposure verdict in *Colpitts*, to re-examine findings in other cases, or to give AII a second chance to litigate facts and claims already being litigated in the Underlying Lawsuits.  To do so would be improper.

## III. CONCLUSION

For the above stated reasons, as well as those set forth in BSI's Motion to Dismiss, BSI requests that the Court dismiss AII's FAC, with prejudice as to successor liability and pre-2004 claims.

Dated:  August 2, 2021

**MILLER NASH LLP**

By: */s/ Phillip Allan Trajan Perez*
Phillip Allan Trajan Perez
Attorney for Defendant
BRENNTAG SPECIALTIES, INC. (now known as Brenntag Specialties, LLC)

**MONTGOMERY MCCRACKEN WALKER & RHOADS LLP**

By: */s/ Richard Placey*
Richard Placey
Georgette Castner
Attorneys for Defendant
BRENNTAG SPECIALTIES, INC. (now known as Brenntag Specialties, LLC)